IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| TOOLCHEX, INC., <br><br>         Plaintiff, <br><br> v. <br><br> PATRICK J. TRAINOR, <br><br>         Defendant. | Action No. 3:08–CV–236 |

MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion for Preliminary Injunction by Toolchex, Inc. For the reasons stated below, the Court will GRANT the Motion.

1. Background

Toolchex is an "administrator of tool reimbursement plans." The company's customers are employers who reimburse their employees for the cost of tools and other equipment that they purchase for their jobs. When an employee of one of Toolchex's customers asks to be reimbursed for a purchase, Toolchex verifies the employee's request, sends an invoice to the employer, and mails the employer a check payable to the employee. Toolchex has provided those services to 900 employers and 15,000 employees. As an investment in its business, Toolchex registered the wordmark TOOLCHEX and the servicemark "TOOLCHEX Plus Design" with the United States Patent and Trademark Office on July 29, 2003 and April 6, 2004, respectively. The company has used those

trademarks to advertise its services continuously since at least May 2002, and alleges that it does not permit its representatives to use those marks without the company's permission.

From November 2006 to December 31, 2007, Patrick J. Trainor represented Toolchex. He was an independent contractor for National Sales Pros, Inc., a company affiliated with Toolchex that marketed its services. Trainor's duties included (1) identifying companies that required their employees to furnish their own tools, (2) informing those companies about Toolchex's services; (3) adding those companies' names to a database that Toolchex maintained; (4) explaining Toolchex's service to its customers' employees, helping those employees sign up for the service, and sending their documents to Toolchex; and (5) photographing the employees' tools. As an independent contractor, Trainor was given access to information about Toolchex's registered marks and to the company's customers and potential customers. But, Toolchex alleges, Trainor was <u>not</u> authorized to enter any contracts on the company's behalf, substantiate any employees' claims for reimbursement, or handle any invoices, money, or checks that were issued by or payable to Toolchex. Nor was he authorized to operate a reimbursement plan using Toolchex's name or its registered marks.

Toolchex alleges that in August 2007, Trainor contacted Barry Moore, the general manager of Haley Pontiac-GMC, a car dealer in Richmond, to ascertain the dealership's interest in Toolchex's service. Representing that he was employed by Toolchex, Trainor met with Moore, other managers, and several of the dealership's mechanics. In October 2007, Moore told Trainor that Haley intended to contract with Toolchex, and on about

December 8, 2007, Trainor sent a Toolchex Client Agreement and other documents to Haley, which it executed, believing that it was entering a contract with Toolchex. But, Toolchex alleges, Trainor never sent any of those documents to Toolchex, nor was Toolchex aware that Haley believed that it was contracting with the company.

Moreover, Toolchex alleges, after Toolchex terminated its affiliation with National Sales Pros on December 31, 2007 – and, by extension, its relationship with Trainor – Trainor continued to "operate and collect the profits from a tool reimbursement plan" for Haley. He allegedly convinced Haley to deal directly with him, offering to collect the dealership's checks and deliver checks payable to Haley's employees directly. He allegedly created counterfeit "Toolchex" invoices totaling approximately $10,700 to Haley on March 15, 2008 and April 1, 2008 and gave checks that were purportedly issued by Toolchex to several of Haley's employees. The invoices bore Toolchex's address, which is in Utah, but a phone number with a Richmond area code; and, the invoices directed Haley to make its check payable to "Tool Reimbursement Plan," not Toolchex. Thus, Toolchex alleges, it never received any payments from, or sent any checks to, Haley.

Toolchex alleges that it found out about Trainor's activity after Trainor told Moore that he was authorized to market Toolchex's services in seven states, that the service that he was marketing had been authorized by Toolchex, and that he had used Haley as a reference for other prospective customers. Moore apparently contacted Toolchex to verify this information, and learned that Haley was not enrolled with Toolchex.

When Toolchex learned about Trainor's activity, it filed suit, seeking damages for trademark counterfeiting, trademark infringement, unfair competition, and false advertising under the Lanham Act, 15 U.S.C. § 1114(1) and 1125(a), and for trademark infringement and unfair competition under Virginia law. In the Motion that is before the Court, Toolchex asks the Court to preliminarily enjoin Trainor from using Toolchex's name or registered marks, or any marks confusingly similar to those marks.[1]

2.  Discussion

A preliminary injunction is "an extraordinary remedy," one "to be granted only sparingly." In re Microsoft Litig., 333 F.3d 517, 524 (4th Cir. 2003). It "maintains a particular relationship between the parties" to a case before it is decided on its merits. United States Dept. of Labor v. Wolf Run Mining Co., 452 F.3d 275, 280 (4th Cir. 2006). Accordingly, whether a preliminary injunction is warranted depends on the relative effect on the parties of maintaining the status quo, as well as the public interest in doing so. Id. And, a preliminary injunction may not grant relief of a character that could not ultimately be granted. In re Microsoft Litig., 333 F.3d at 525.

A court deciding whether to issue a preliminary injunction must weigh four factors: (1) the likelihood of irreparable harm to the plaintiff if its request for relief is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the plaintiff will succeed on the merits of its claim; and (4) the public interest. Blackwelder

---

[1] As of the date of this Order, Trainor has not answered Toolchex's Complaint or responded to its Motion for Preliminary Injunction, responses that were due on May 12 and May 6, respectively. Toolchex states that it attempted to contact Trainor by mail and telephone but that Trainor did not respond to its inquiries.

Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 193 (4th Cir. 1977); accord Wolf Run Mining Co., 452 F.3d at 280.

      The United States Supreme Court has not specified the order in which a court should analyze those factors, nor the weight that they should be given. See Globe Nuclear Svcs. & Supply, Ltd. v. AO Techsnabexport, 376 F.3d 282, 287 (4th Cir. 2004). In some decisions, the Fourth Circuit has declared that the first two factors – the "balancing of harms" test – are the most important. See, e.g., Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir. 1991). In Blackwelder, the Fourth Circuit declared that a court deciding whether to grant a preliminary injunction must first compare the likelihood of irreparable harm to the plaintiff to the likelihood of harm to the defendant; if "a decided balance of hardship" in the plaintiff's favor results, then a preliminary injunction is warranted if the plaintiff's claims involve serious, difficult questions. 550 F.2d at 195. As the probability that the plaintiff will suffer irreparable harm decreases, the importance of the third factor – the strength of the plaintiff's case – increases. Id. Although the Fourth Circuit has adopted this approach on several occasions, it recently cautioned that focusing on the "balancing of harms" test is contrary to Supreme Court precedent. See Scotts Co. v. United Indus. Corp., 315 F.3d 264, 271 n.2 (4th Cir. 2002).

      The party seeking the preliminary injunction bears the burden of proving that each factor supports granting relief. Direx Israel, 952 F.2d at 812.

A. <u>Toolchex may be irreparably harmed if the Court does not issue an injunction</u>

Toolchex argues that it will be irreparably harmed by Trainor's activity because it cannot control its reputation: specifically, its name has been associated with other services whose quality Toolchex cannot control.

The Fourth Circuit has recognized that "irreparable injury regularly follows from trademark infringement." <u>Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.</u>, 43 F.3d 922, 939 (1995) (affirming a grant of a permanent injunction).[2] A party may prove that it was irreparably injured by showing that its customers were actually confused by the defendant's allegedly infringing activity, or by demonstrating the "possibility" of a "risk to [the party's] reputation." <u>Id.</u>

But, an injunction is not necessary if "there is <u>no</u> reasonable expectation that the wrong will be repeated." <u>Lyons P'ship, L.P. v. Morris Costumes, Inc.</u>, 243 F.3d 789, 800 (4th Cir. 2001) (quoting <u>United States v. W.T. Grant Co.</u>, 345 U.S. 629, 633 (1953)); see <u>Wynne v. Aluminum Awning Prods. Co.</u>, 202 F.2d 130, 131 (4th Cir. 1953) (affirming a

---

[2] In the context of a claim for trademark infringement under the Lanham Act, if the plaintiff proves that the allegedly infringing mark is likely to confuse consumers, courts generally apply "a presumption of irreparable injury." <u>Scotts Co.</u>, 315 F.3d at 273 (citing a ruling that the requirement of irreparable injury does not carry any "independent weight"). The Fourth Circuit has not explicitly affirmed that approach, although it has observed that district courts in this circuit have found that a showing that advertising tends to mislead or confuse satisfies the "irreparable injury" requirement. <u>Id.</u> at 274 n.3. In addition, in the context of a claim for <u>copyright</u> infringement, the Fourth Circuit has ruled that if a party establishes a prima facie claim of infringement, a court may presume that the party could show that it is likely to succeed on the merits of its claim and to suffer irreparable harm if an injunction is not granted. <u>Serv. & Training, Inc. v. Data Gen. Corp.</u>, 963 F.2d 680, 690 (4th Cir. 1992). Applying these principles, since Toolchex has shown that it is likely to succeed on the merits of its claim, as the Court discusses below, Toolchex does not have to show that Trainor is likely to continue to infringe its trademarks.

denial of a request for an injunction in a case in which the defendant "abandoned" the use of the plaintiff's trademark and changed its corporate name to eliminate a word that infringed on that trademark); cf. Moose Creek, Inc. v. Abercrombie & Fitch Co., 331 F. Supp. 2d 1214, 1232 n.11 (C.D. Cal. 2004) (denying a motion for a preliminary injunction, noting that the defendant had stopped publishing a catalog that allegedly damaged the plaintiff's goodwill by depicting "scantily[-]clothed teenagers and a stuffed moose in sexually suggestive positions," thereby reducing the likelihood that the plaintiff would be irreparably injured in the future).[3] Accordingly, in Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc., 26 F. Supp. 2d 834, 863 (E.D. Va. 1998), the Court refused to permanently enjoin the publication of an allegedly false advertisement on the ground that the defendant had modified the advertisement to make it accurate.

However, the Fourth Circuit has not prohibited courts from granting injunctive relief even if challenged conduct is not ongoing. See Lyons P'ship, 243 F.3d at 800–01 (ruling that a plaintiff "was entitled to an injunction," even though the defendants stopped infringing the plaintiff's trademark while litigation was pending, because the defendants' "bald assertions" that they would stop the challenged conduct did not "eliminate the plaintiff's reasonable expectation that the alleged violation w[ould] recur"). Compare Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002) (requiring a party seeking a preliminary injunction "to show that there is a continuing harm") (internal punctuation

---

[3] However, other courts have held that an injunction may be warranted precisely because a defendant has stated that it will not engage in unlawful behavior in the future, since for that reason the injunction will not harm the defendant. See, e.g., Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132, 1135–36 (9th Cir. 1986).

omitted), with Schutt Mfg. Co. v. Riddell, Inc., 673 F.2d 202, 207 (7th Cir. 1982) (ruling that a court may "grant or deny an injunction against conduct [that] has ceased and is not likely to recur" at its discretion).

Here, Toolchex alleges that, "[u]pon information and belief," Trainor is currently using its trademarks to, among other things, offer Toolchex's services, enter contracts on behalf of the company, and operate tool reimbursement plans.  Toolchex does not substantiate that claim in any way, and it describes only one case of allegedly unlawful conduct, Trainor's relationship with Haley.  But, the generality of those allegations is justified by the nature of the wrongdoing that Toolchex alleges – i.e., that Trainor is offering the company's service without its knowledge, in a way that deceives customers into believing that he represents Toolchex, minimizing the chances that a customer would contact the company directly – a problem that is exacerbated by the fact that Trainor has not responded to Toolchex's Complaint and the company allegedly has not been able to contact him.  Moreover, whereas the Lyons Partnership court found that a "bald assertion" that the challenged conduct would stop did not allay the plaintiff's fears, in this matter Trainor has not provided any kind of assurance that he will not infringe Toolchex's trademarks in the future.  Thus, the Court finds that this factor favors Toolchex because (1) Toolchex has adequately shown that Trainor's allegedly infringing activity is likely to continue, taking into account the fact that he cannot be found; and (2) Toolchex can reasonably expect that Trainor's activity will recur, given that he has not provided any type of assurance that he will stop using the company's trademarks.

B.  <u>Trainor will not be harmed if the Court issues an injunction</u>

Toolchex argues that, if the Court enjoins Trainor from using the company's trademarks, the only harm that he will suffer is that he will not be able to engage in trademark infringement.

The Seventh Circuit has ruled that any harm that a party suffers as a result of being required to stop willfully infringing on another party's trademark carries "little" weight in evaluating the balance of hardships. <u>Helene Curtis Indus., Inc. v. Church & Dwight Co.</u>, 560 F.2d 1325, 1333 (7th Cir. 1977). Similarly, the Second Circuit has held that prohibiting a party from deliberately infringing upon another party's trade dress does not give the usurping party "any standing to complain that his vested interests will be disturbed." <u>My-T Fine Corp. v. Samuels</u>, 69 F.2d 76, 78 (1934) (Hand, J.). This Court has adopted that position in a slightly different context, suggesting that requiring a party to comply with its contractual obligations does not constitute harm. <u>See also</u> <u>JTH Tax, Inc. v. Lee</u>, 514 F. Supp. 2d 818, 826 (E.D. Va. 2007).

Since Trainor has not responded to the Motion, it is possible that he will suffer a hardship that Toolchex does not address. But, based on the information that is available to the Court, this factor weighs strongly in Toolchex's favor.

C.  <u>Toolchex's claims will probably succeed</u>

Toolchex has brought claims for trademark counterfeiting and false advertising under the Lanham Act, 15 U.S.C. § 1114(1) and 1125(a), and for trademark infringement and

unfair competition under the Lanham Act and Virginia law.[4] For the purpose of this Motion, the company focuses on its trademark infringement claim, however.

To prevail on a claim of trademark infringement under the Lanham Act, a party must show that it has a trademark that (1) is valid and (2) can be protected, and that (3) the defendant's use of an imitation of that trademark is likely to confuse consumers. Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 170 (4th Cir. 2006). To show that a mark is valid and can be protected, a party must provide evidence that (1) the mark has been used "in such a manner that its nature and function are readily apparent and recognizable without extended analysis or research," MicroStrategy, 245 F.3d at 342; (2) the party registered and owns the mark; and (3) the party is exclusively entitled to use the mark in commerce. 15 U.S.C. § 1114(1); Lone Star Steakhouse, 43 F.3d at 930. To evaluate the third factor of that test, the key to a claim of trademark infringement, a court should consider:

(1) the strength or distinctiveness of the plaintiff's trademark;
(2) the similarity of the two marks;
(3) the similarity of the goods and services that the marks identify;
(4) the similarity of the facilities that the two parties use in their businesses;
(5) the similarity of the advertising the two parties use;
(6) the defendant's intent; and
(7) whether actual confusion occurred.

Synergistic Int'l, 470 F.3d at 171; see Sweetwater Brewing Co., 266 F. Supp. 2d at 461 (noting that the two marks do not have to be identical). A court does not have to consider

---

[4] The test for trademark infringement and unfair competition under the Lanham Act is "essentially the same" as the test for unfair competition under Virginia law. Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 171 n.9 (4th Cir. 2006).

all of those factors, however, and an injunction may be warranted even if some of those factors do not favor the plaintiff.  Synergistic Int'l, 470 F.3d at 171.

Here, Toolchex has alleged (in an affidavit by the company's president) that it uses its trademarks in advertisements and on its forms, indicating their nature and function.  It alleges that it has registered the trademarks with the United States Patent and Trademark Office, indicating that it is exclusively entitled to use those trademarks.  Morever, Toolchex alleges that Trainor used in a way that actually confused a customer – Haley.  Toolchex has provided an affidavit from Haley's general manager that suggests that Haley was actually confused by Trainor's use of Toolchex's trademarks.  The marks that Trainor used were identical (or nearly so) to Toolchex's marks, and the services that he provided were similar.

On the basis of these allegations, Toolchex is likely to succeed on the merits of its claims.[5]

D.     <u>The public interest supports granting injunctive relief</u>

The purpose of a trademark is to protect the public from confusion about "the identity of the enterprise from which goods and services are purchased."  AMP Inc. v. Foy, 540 F.2d 1181, 1185–86 (4th Cir. 1976).  Preventing consumers from being confused serves the public interest, JTH Tax, Inc., 514 F. Supp. 2d at 826, as does preventing trademarks from being used deceptively, Bowe Bell & Howell Co. v. Harris, 145 F. App'x 401, 404 (4th Cir. 2005) (unpublished) (affirming a grant of a preliminary injunction),

---

[5] Toolchex might also prevail in this suit because Trainor failed to respond to the company's Complaint in a timely fashion.  See Credit Alliance Corp. v. Williams, 851 F.2d 119, 122 (4th Cir. 1988) (describing a default judgment as a judgment on the merits).

protecting the interests of trademark owners, NaturaLawn of Am., Inc. v. W. Group, LLC, 484 F. Supp. 2d 392, 404 (D. Md. 2007), and enforcing valid contracts, id.

Here, at least a portion of the public was actually confused by Trainor's conduct, and he allegedly used Toolchex's trademarks deceptively in a way that harmed the company's interest and without contractual authorization. Thus, this factor supports granting a preliminary injunction.

3. Conclusion

For the reasons stated above, the Court will GRANT the Motion for Preliminary Injunction, and ENJOIN Trainor from using any of Toolchex's registered trademarks.

It will be SO ORDERED.

/s/
James R. Spencer
Chief United States District Judge

ENTERED this  2nd  day of June 2008