UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

TOOLCHEX, INC.,

Plaintiff,

v.                                                            Action No. 3:08–CV–236

PATRICK J. TRAINOR,

Defendant.

MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff's Motion for Default Judgment

and Permanent Injunction (Docket No. 14), Plaintiff's Motion for Attorneys' Fees and

Costs under 15 U.S.C. § 1117(a) (Docket No. 16), and Plaintiff's Motion for Entry of

Orders (Docket No. 21).  For the reasons stated below, Plaintiff's Motions for Default

Judgment, Permanent Injunction, and Attorneys' Fees and Costs will be GRANTED.

Plaintiff's Motion for Entry of Orders will be DISMISSED as MOOT.

I.  BACKGROUND

The history of this case is stated in detail in the Court's Memorandum Opinion

granting the Preliminary Injunction, and should be fully incorporated herein.  See

Toolchex Inc. v. Trainor, No. 3:08CV236, 2008 WL 2323232, at *5 (E.D. Va. June 2,

2008).  Only the procedural facts relevant to these Motions are stated below.

In June 2008, this Court enjoined Patrick Trainor ("Trainor") from using any of

Toolchex, Inc.'s ("Toolchex") registered trademarks, including "TOOLCHEX" and

"TOOLCHEX Plus Design," or any marks that are confusingly similar to any of

1

Toolchex's registered trademarks in any way for commercial purposes.  See Toolchex, Inc., 2008 WL 2323232, at *6.  Specifically, this Court found that it was likely that Trainor would continue infringing on Toolchex's trademarks in the future—primarily because Trainor refused to respond to Toolchex's allegations or assure Toolchex that he would stop using its protected trademarks.  Additionally, Toolchex adequately demonstrated that it was likely to succeed on the merits of its case because the trademarks were registered and Trainor had used them in a confusing and deceptive way.  Lastly, the public interest supported an award of injunctive relief because an injunction would stop any further confusion caused by Trainor's actions.

Toolchex served copies of this Court's Order and Opinion to Trainor on June 3, 2008, but Trainor failed to respond in any way.  The Clerk's office, at Toolchex's request, entered Default against Trainor on June 13, 2008.  On November 25, 2008, counsel for Toolchex sent Trainor a letter requesting his consent to entry of a permanent injunction, however the letter went unanswered.  (Aff. of Thomas J. O'Brien Supp. Pl.'s Mot. for Default J. & Prelim. Inj., ¶10, Ex. 1.)  On December 10, 2008, Plaintiff moved for Default Judgment as to liability and for a Permanent Injunction.  On December 30, 2008, Plaintiff also moved for Attorneys' Fees and Costs.  Trainor has not responded to the Court or to Toolchex in relation to any of the motions filed in this case.

## II.  ANALYSIS

### A.  Default Judgment

Federal Rule of Civil Procedure provides that a Court may enter default judgment upon application by a party.  Fed. R. Civ. P. 55(b)(2).  Where a defendant fails to plead or otherwise defend itself, default judgment is warranted.  Music City Music v. Alfa Foods, Ltd., 616 F. Supp. 1001, 1002 (E.D. Va. 1985); JTH Tax, Inc. v. Smith, No. 2:06CV76, 2006 WL 1982762, at *1 (E.D. Va. June 23, 2006).  The party requesting default judgment must show: "(1) when and against what party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that the defendant is not in the military services; and (5) that notice has been served on the defaulting party, if required by Fed. R. Civ. P. 55(b)(2)."  JTH Tax, 2006 WL 1982762, at *1.

Default was entered against Trainor on June 13, 2008, for trademark infringement.  Trainor is not an infant, an incompetent person, nor is he in the military.  (O'Brien Aff. Supp. Default J. ¶¶ 11–12, Ex. 2.)  Lastly, he has not appeared on his own behalf, or by counsel, at any time during the litigation.  For this reason, the Court will GRANT the Motion and ENTER Default Judgment as to liability for Toolchex.

B.  Permanent Injunction

In order to award a permanent injunction, Plaintiff must demonstrate irreparable harm, the inadequacy of a legal remedy (monetary damages), a weight in its favor when balancing hardships, and that the public would not be disserved by making the injunction permanent.  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).  A decision to grant or deny a permanent injunction is reviewable for abuse of discretion.  Id.; Weinberger v. Romero-Barcelo, 456 U.S. 305, 311–13 (1982).  This Court has jurisdiction, pursuant to the Lanham Act, to enter injunctive relief to prevent the violation of a registered mark holder's rights.  15 U.S.C. § 1116(a) (2006).

1.  Irreparable injury

Toolchex asserts it has suffered irreparable injury because of Trainor's willful infringement of its marks. "Irreparable injury necessary for injunctive relief regularly follows from trademark infringement."  Teaching Co. Ltd. P'ship v. Unapix Entmt., Inc., 87 F. Supp. 2d 567, 587 (E.D. Va. 2000) (citing Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 939 (4th Cir. 1995)).[1]  Trainor has willfully infringed on Toolchex's mark by associating himself with Toolchex without Toolchex's control or consent, and as a result, the public was misled by his claims that he represented Toolchex.  Both of these circumstances constitute irreparable injury weighing in favor of a permanent injunction.

---

[1]  Toolchex's assertions of trademark infringement contained within the Complaint are considered admitted by Trainor because default has been entered against him. Globalsantafe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003).

2.  Adequacy of legal remedies

Toolchex contends that monetary damages in this case are inadequate because Trainor's actions have injured its "reputation and goodwill."  The Court agrees.  Damages to reputation and goodwill are not items that are easily measured by a legal calculation of damages.  Lone Star Steakhouse, 43 F.3d at 939 (finding that trademark infringement causes damage to reputation which may not provide a monetary remedy); Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc., 550 F.2d 189, 197 (4th Cir. 1977) (finding some injury to be "incalculable").

Toolchex believes that Trainor will continue to use Toolchex's trademarks unless this Court permanently enjoins him from doing so.  Additionally, the manner in which Trainor misrepresented himself—doing personal business under the Toolchex name—furthers Toolchex's concern that without injunctive relief, Trainor would continue to damage Toolchex's business.  Considering that Trainor has failed to respond to any of these proceedings, any future infringement in the absence of a permanent injunction will require Plaintiff to bring successive suits for monetary damages.  See Teaching Co. Ltd. P'ship, 87 F. Supp. 2d 587.  Accordingly, the proper remedy here would be a permanent injunction as opposed to other legal remedies.

3.  Balance of Hardships

Toolchex correctly points out that this Court has already found that the balance of hardships weighs in favor of Toolchex.  Toolchex, Inc., 2008 WL 2323232, at *5.  Because no other evidence has been presented in the alternative, the balance of hardships remains in favor of Toolchex.

### 4.  Public Interest

As stated in the Opinion granting the preliminary injunction, "at least a portion of the public was actually confused by Trainor's conduct, and he allegedly used Toolchex's trademarks deceptively in a way that harmed the company's interest."  Toolchex, Inc., 2008 WL 2323232, at *6.  Preventing confusion is in the public interest, and because Trainor deceived the public by using the Toolchex brand, there would be no disservice to the public by permanently enjoining Trainor.

For the reasons stated above, entry of a permanent injunction against Trainor is appropriate.  Toolchex has demonstrated irreparable injury, as well as why legal remedies would be inappropriate, that the balance of harms weighs in its favor, and why the public interest would be served by entry of an injunction.   Therefore, the Motion for Permanent Injunction will be GRANTED.  Trainor will be PERMANENTLY ENJOINED from (1) using any of Toolchex's registered trademarks, or any marks that are confusingly similar to any of Toolchex's trademarks, in any way for any commercial purpose, and (2) representing to the public that he is employed by Toolchex or that he represents the interest of Toolchex.

## C.  Award of Attorneys' Fees and Costs

As the prevailing party in this matter, Plaintiff also seeks costs and reasonable attorneys' fees pursuant to the Lanham Act, 15 U.S.C. § 1117(a).

### 1. Costs

The Lanham Act provides for the award of costs to the prevailing party.  15 U.S.C. § 1117(a).  The Fourth Circuit has used the costs outlined in 28 U.S.C. § 1920 to

define what costs are available under the Lanham Act.[2]  People for the Ethical

Treatment of Animals v. Doughney, 263 F.3d 359, 370 (4th Cir. 2001).  Toolchex seeks

to recover costs of $401.60—$350.00 for filing fees for the Complaint, and $51.60 for

printing and photocopying documents for use in this matter.  Because these costs fall

within the scope of those permitted, the Court will award $401.60 in costs to

Toolchex.

       2.  Attorneys' fees

       The Lanham Act allows a party to recover attorneys' fees, but only when the

case is "exceptional."  15 U.S.C. § 1117(a) (2006).  The Fourth Circuit deems a case

"exceptional" if the defendant's conduct was "malicious, fraudulent, willful or

deliberate in nature."  PETA, 263 F.3d 359, 370 (4th Cir. 2001) (citing Scotch Whisky

Ass'n v. Majestic Distilling Co., Inc., 958 F.2d 594, 599 (4th Cir. 2001)).  Further, there

must be a showing that the defendant acted in bad faith.  Retail Servs. v. Freebies

Publ'g, 364 F.3d 535, 551 (4th Cir. 2004) (citing Scotch Whisky Ass'n, 958 F.2d at

599)).

---

[2]  Those costs are:

> (1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any party of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920 (2006).

### a.  Willful/deliberate

To constitute willfulness, the actions must have been "voluntary and intentional, but not necessarily malicious."  <u>Flexible Benefits Council v. Feltman</u>, No.1:08CV371, 2009 WL 1351653, at *4 n. 1 (E.D. Va. May 14, 2009) (<u>citing</u> <u>Black's Law Dictionary</u> 1630 (8th ed. 2004)); <u>Agri-Supply Co., Inc. v. Agrisupply.com</u>, 457 F. Supp. 2d 660, 666 n. 3 (E.D. Va. 2006) ("The courts have defined 'willful' for purposes of this § 1117(a)'s attorney fee provision as 'having knowledge that one's conduct constitutes infringement or showing reckless disregard for the owner's rights.'" (<u>quoting</u> <u>Microsoft Corp. v. Grey Computer</u>, 910 F. Supp. 1077, 1091 (D. Md. 1995)). Here, it is apparent that Trainor's actions constituted willful and deliberate behavior. He entered into a contract in Toolchex's name without permission, he collected checks on behalf of Toolchex after his termination without sending the profits to Toolchex, he created counterfeit invoices with the Toolchex logo, and he convinced members of the public to avoid dealing directly with Toolchex.  This illegal use of Toolchex's name, trademark, and goodwill make it evident that Trainor was acting willfully and deliberately.

### b.  Bad Faith

In order to demonstrate bad faith, a showing of malicious conduct or knowledge of violation must be made.  <u>Two Men & a Truck Int'l, Inc. v. Clete, Inc.</u>, No. 1:07CV394, 2009 WL 899698, *1 (W.D.N.C. Mar. 26, 2009) (concluding that the defendants had been acting in bad faith because they had been unwilling to communicate or discuss the infringement even after being served with process and

failed to respond to pleadings before the court); <u>High Voltage Beverages, L.L.C. v. Coca-Cola Co.</u>, No. 3:08CV367, 2008 WL 5110891, at *5 (W.D.N.C. Dec. 2, 2008) (holding that bad faith requires a showing of "malicious conduct"); <u>7-Eleven, Inc. v. McEvoy</u>, 300 F. Supp. 2d 352, 357 (D. Md. 2004) (<u>citing</u> <u>Ramada Inns, Inc. v. Gadsen Motel Co.</u>, 804 F.2d 1562, 1563, 1567 (11th Cir. 1986) (holding that bad faith was present when franchisee used franchisor's trademarks after termination of franchise agreement)); <u>Motor City Bagels, L.L.C. v. American Bagel Co.</u>, 50 F. Supp. 2d 460, 488 (D. Md. 1999) (requiring a showing that use of the protected mark took place after termination of a franchise agreement to determine bad faith).

There can be no doubt that Trainor acted in bad faith warranting the award of attorneys' fees.  After his contract with Toolchex had expired, he created fake invoices with the Toolchex mark that he gave to customers, and he requested that the checks be payable to the "Tool Reimbursement Plan," instead of Toolchex. Further, he held himself out as a representative of Toolchex, even after his contract with Toolchex had expired.  Lastly, he has failed to respond to any of the current proceedings against him, even though he is aware of the proceedings before this Court.[3]

---

[3]  Toolchex also correctly points out that Trainor's negligent disregard for this Court's proceedings in this case also weighs in favor of an award of attorneys' fees.  This Court has held that "willful defiance and protraction of the judicial process attempting to stop the illegalities" is also a justification for awarding attorneys' fees. <u>Agri-Supply Co.</u>, 457 F. Supp. 2d at 666.  Trainor has found it unnecessary to respond to Plaintiff's Complaint, Motions for Preliminary and Permanent Injunction, Motion for Attorneys' Fees, or any of the Court's Orders or Opinions.  Thus, this negligent disregard also supports an award of attorneys' fees.

Because Plaintiff has adequately demonstrated the existence of willful and deliberate actions and bad faith, the Court finds that this is an "exceptional" case under 15 U.S.C. § 1117(a), and attorneys' fees will be awarded to Toolchex.

3.  Reasonableness of fees

To determine the specific amount of an award the court must consider, and make detailed findings of fact with respect to, twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation[,] and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 & n.28 (4th Cir. 1978) (adopting the factors from Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974)).  But see Arnold v. Burger King, 719 F.2d 63, 67 n.4 (4th Cir. 1983) (stating that a court is not required to attribute at length a portion of the award to each factor); Colonial Williamsburg Found. v. Kittinger Co., 38 F.3d 133, 138 (4th Cir. 1994) (affirming a court's award of attorneys' fees, even though the court "did not specifically address all of the factors enunciated in Barber").

Of those factors, the eighth—the "degree of success" that a party achieves—is the most important.  Hensley v. Eckerhart, 461 U.S. 424, 436 (1983); accord Nigh v. Koons Buick Pontiac GMC, Inc., 478 F.3d 183, 190 (4th Cir. 2007) (ruling that the

"extent of the relief" that a party obtains is a "particularly important" factor, because it indicates the strength of the party's position).  In addition, the twelve factors are not the only ones that merit consideration; for example, a court may "give weight to the relative financial positions of the litigants" and "the motivation of the plaintiff." Arnold, 719 F.2d at 67–68.

### a.  Case circumstances and client relationship (factors 4, 7, 10, 11)

Toolchex asserts, and this Court agrees, that the fees submitted are reasonable considering the damage Trainor caused to Toolchex by misrepresenting himself as a Toolchex representative, and the prompt action required to bring his trademark infringement to an end.  Toolchex has used these attorneys, and this firm, for four years and has built a relationship with them allowing counsel to effectively represent them before this Court.

### b.  Time and labor required, attorney expectations (factors 1, 2, 6)

Additionally, the time required to represent Toolchex was done on an expedited basis to "seek an early end to Trainor's unlawful conduct" and most of the work done in this case was done by associates to limit the costs to Toolchex. However, regardless of the expediency and cost-saving methods used by counsel, significant time was spent on this case, which was exacerbated by Trainor's failure to respond or cooperate in this litigation.

### c.  Skill required for this case and abilities of attorneys (factors 3, 9)

The litigators who worked on this case have knowledge of the federal court system and the experience to litigate a case of this nature.  Both of the partner-

attorneys on this case have extensive civil litigation experience and the associates
who assisted also have intellectual property experience related to infringement
actions.

### d.  Amount involved and results obtained (factor 8)

There can be no question that the goal of this case was to stop Trainor from
infringing on Toolchex's intellectual property, and this goal was achieved.  For this
reason, it is uncontested that Toolchex has had 100% success in this matter.

### e.  Customary fees and awards in similar cases (factors 5, 12)

Toolchex asserts that the fees in this case are "significantly less" than those
that would be present in other infringement actions because Trainor chose not to
appear.  Considering the potential legal battle that could have taken place in this
case, the fees requested by Toolchex are reasonable.  Especially in light of what the
fees could have been—on average in excess of $400,000.00, according to a report
done in 2007 on the costs related to litigating infringement actions.  (See Aff. Thomas
O'Brien Supp. Mot. for Attorneys' Fees & Costs, Ex. 2.)

Further, Toolchex's fees are customary and reasonable when compared to
Richmond area fee schedules for similar cases.

### 4.  Lodestar figure

Guided by those factors, the court should determine how many hours were
reasonably spent on the litigation and the rate at which that work should be
compensated.  See McDonnell v. Miller Oil Co., 134 F.3d 638, 640 (4th Cir. 1998).  On
that basis, the court can determine a "lodestar figure," which may be adjusted

further.  Id.; see Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir.

1994) (stating that an attorney who achieves "exceptional success" should receive

extra compensation); Cleveland Demolition Co. v. Azcon Scrap Corp., 827 F.2d 984,

988 (4th Cir. 1987) (affirming the reduction of an award of fees because "the case was

slightly over-lawyered" and several attorneys "failed to provide the district court

with sufficient information about their professional backgrounds").  But see Colonial

Williamsburg Found., 38 F.3d at 138 (ruling that a court should "first focus on the

time and labor expended and the customary fees for like work," and then "consider

whether to adjust [the size of an award of attorneys' fees] on the basis of the other

factors"); Arnold, 719 F.2d at 67 n.4 (noting that calculating the lodestar figure takes

into account "many of the [Barber] factors," which do not need to be considered

further).

Toolchex requests $58,423.00 in attorneys' fees for 145.2 hours of work.  89.2%

of this time represents work done by associate level attorneys who were billed using

a lower rate.  Toolchex provides ample documentation in support of its request for

fees in Exhibit 1 filed with Thomas O'Brien's affidavit in support of the Motion for

Attorneys' Fees.

Considering the Barber factors, Toolchex's overall success, and because there

is no objection from Defendant, the Court finds that $58,423.00 is a reasonable

amount of attorneys' fees to award for litigating this matter.

## III.  CONCLUSION

For the reasons stated above, Plaintiff's Motions for Default Judgment, Permanent Injunction, and Attorneys' Fees and Costs will be GRANTED.  Default Judgment will be ENTERED for Toolchex.  Trainor will be PERMANENTLY ENJOINED from using any of Toolchex's registered trademarks, or any marks that are confusingly similar to any of Toolchex's trademarks, in any way for any commercial purpose.  Trainor is also PERMANENTLY ENJOINED from representing to the public that he is employed by Toolchex or that he represents the interest of Toolchex.  The Court will also AWARD Toolchex $58,423.00 for attorneys' fees and $401.60 for costs.

Finally, the Motion for Entry of Orders will be DISMISSED as MOOT.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this __24th__ day of July 2009